UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **GRANDVILLE DEWAYNE WILLIAMS** | **CIVIL ACTION NO. 23-0611** |
| **VS.** | **SECTION P** |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **CADDO CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Grandville Dewayne Williams, a prisoner at Caddo Correctional Center ("CCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately May 3, 2023, under 42 U.S.C. § 1983. He names the following defendants: CCC, CCC Staff, Warden Steve Prator, Commander Rick Farris, E.R.T. Riley, E.R.T. Washington, Sergeant K. Dibler, CCC Committee Board, and Deputy L. Greene.[1] For reasons that follow, IT IS RECOMMENDED that the Court should dismiss Plaintiff's claims. IT IS ORDERED that Plaintiff's latest motions to amend [doc. #s 32 & 33] are DENIED as futile and/or unnecessary.

### Background

Plaintiff first claims that CCC "and its affiliates" have tasered mentally ill prisoners, beat them, and deprived them of "programs needed to help assist them with their mental health issues."[2] [doc. # 4, p. 10]. He adds that prisoners are held in their cells for twenty-four hours on certain days, which causes them mental trauma. *Id.* at 13. In an amended pleading, Plaintiff alleges that he is only allowed out of his cell "every 27 to 29 hours" even though the "rule

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[2] To date, Plaintiff has filed at least ten different pleadings.

book/handbook of CCC says inmates should have recreation every twenty-four hours." [doc. # 28, p. 1].

Plaintiff initially claimed that after he filed two lawsuits concerning denial of entry into programs at CCC, deputies seized his paperwork and threatened to place him in "Men Mental Health." [doc. # 4, p. 11]. In an amended pleading, Plaintiff writes that deputies returned his paperwork. [doc. # 28, p. 1].

Plaintiff claims that facilitators at CCC misspelled his surname in a kiosk system by including an additional letter. [doc. #s 7, p. 2; 28, p. 1]. He maintains, consequently, that CCC has "submitted false information or misrepresentations," provided a false name, and altered public records all in violation of state law. *Id.*

On June 1 or 3, 2023, Plaintiff had an altercation with another inmate. [doc. #s 10, p. 3; 28, p. 1]. He claims that "E.R.T. Riley"[3] then handcuffed him, removed him from view of a camera, took him to a medical room, and used excessive force, punching him in the right side of his head and behind his left ear. [doc. #s 8, p. 1; 10, p. 3]. Plaintiff's face was swollen, and his head hurt. [doc. # 8, p. 1]. He suggests that he suffered a fractured skull. [doc. # 28, p. 2]. He maintains that he was not a threat after Riley handcuffed him. *Id.*

Next, Plaintiff asks: "Deputy L. Greene locked me down for stating the 1st Amendment of the U.S. Constitution?" [doc. # 29, p. 1]. Plaintiff then claims that "a couple days later" E.R.T. Washington fought him, removed him from view of a camera, and beat him severely while he was in handcuffs, breaking his left rib. [doc. #s 20; 28, p. 1; 29, p. 1].

---

[3] Presumably by "E.R.T.," Plaintiff means that Defendant Riley was a member of an emergency response team.

2

Plaintiff claims that Sergeant K. Dibler refuses to give him a work position at CCC because of his disciplinary history. [doc. # 22, p. 1]. Plaintiff alleges that "they" allowed another prisoner, who started an insurrection, on a work crew. *Id.* at 2.

Plaintiff claims that the CCC Committee Board "made massive permanent decisions for [him] not to receive any help and go to a program unit[.] [sic]." [doc. # 28, p. 1]. He also suggests that the CCC Committee Board assigned him to "Level 2 status." *Id.*

Plaintiff claims: "Due to this case deputies are instructed to lock me down in shackles, and I believe torture me." [doc. # 28, p. 1].

Plaintiff claims that Rick Farris "violated his duty as a commander to provide safety to inmates incarcerated at CCC." [doc. # 28, p. 2].

Plaintiff seeks habeas corpus relief, monetary compensation, and the closure of CCC. [doc. #s 4, p. 15; 8, p. 2; 10, p. 4; 22, p. 3; 28, p. 2].

Plaintiff has amended his complaint, with and without leave of court, eight times. He now seeks to amend a ninth and tenth time.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual

allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Violation of a Prison Rule

Plaintiff claims that he is only allowed out of his cell "every 27 to 29 hours" even though the "rule book/handbook of CCC says inmates should have recreation every twenty-four hours." [doc. # 28, p. 1].

"[T]he failure of prison administrators to follow prison rules and regulations does not, without more, give rise to a constitutional violation." *Moreno v. Bunton*, 193 F.3d 518 (5th Cir. 1999); *see Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("The [LDPSC] and [Corrections Corporation of America] internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal footnotes removed).

Here, to the extent Plaintiff seeks relief solely for a defendant's alleged violations of facility guidelines and rules, he does not state a plausible claim. The Court should dismiss this claim.[5]

**3. Custodial Classification**

Plaintiff complains of his assignment to "Level 2 status." [doc. # 28, p. 1]. A prisoner, however, "has no constitutional right to a particular classification." *Mozee v. Crowley*, 188 F. App'x 241, 242 (5th Cir. 2006). In *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995), for instance the plaintiff argued that "prison officials wrongly denied his requests to be reclassified for protective custody, safekeeping status, or for a unit transfer, all in disregard of his safety." The court held: "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to

---

[5] Plaintiff did not frame his claim as a constitutional violation. In his latest attempts to amend, which are denied below, it is unclear he is attempting to assert a constitutional claim or again claiming a violation of prison rules or policy. Even if he were trying to state a constitutional claim, he does not state a plausible claim. To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). While some level of exercise and recreation is certainly an identifiable life need, Plaintiff does not describe an extreme deprivation of a life need, and he does not describe a substantial risk of serious harm.

6

establish a constitutional violation." *Id.*; *see Zamora v. Stephens*, 732 F. App'x 305, 307 (5th Cir. 2018). The Court should dismiss this claim.[6]

### 4. Conclusory Claim

Plaintiff writes: "[D]eputies are instructed to lock me down in shackles, and I believe torture me." [doc. # 28, p. 1]. Plaintiff does not, however, expound. He does not, for instance (and despite the undersigned's instructions to describe exactly how each defendant violated his rights), explain his 'belief' or speculation that he is tortured or the extent or duration he is shackled. The Court should dismiss this all-too-conclusory claim.

### 5. Habeas Corpus Relief

Plaintiff seeks release from custody (i.e., habeas corpus relief) for himself and other prisoners. This relief is unavailable through a civil rights action.[7] *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (any claim attacking the validity or duration of confinement must be raised in a habeas corpus petition); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "A habeas petition . . . is the proper vehicle to seek release from custody." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). The Court should therefore dismiss Plaintiff's habeas corpus request from this civil rights action.

---

[6] Plaintiff does not claim that he was deprived of procedural due process before or after he was assigned to, or classified as, Level 2 status.

[7] Even if habeas corpus relief was available in this proceeding, Plaintiff would lack standing to pursue the relief on behalf of other prisoners. Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.").

Plaintiff may pursue his request for release from custody in a separate habeas corpus action. The undersigned cautions that Plaintiff must first exhaust all his available *state* remedies before he may obtain habeas corpus relief in this Court. The undersigned also cautions Plaintiff that habeas corpus relief is generally unavailable as a remedy for claims unrelated to the cause of the prisoner's confinement. *See generally Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).

**6. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

Plaintiff seeks compensation. Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Plaintiff "brought" this action when he was incarcerated. [doc. #s 4, p. 2; 4-1]. Excepting his excessive force claims, he seeks monetary compensation for only mental or emotional injuries he suffered while in custody. In other words, as to all claims other than his excessive force claims, he does not allege that he suffered any prior physical injury or the commission of a sexual act as defined in 18 U.S.C. § 2246. In fact, Plaintiff limits his request for

8

compensation to the injuries he suffered from the alleged uses of force. [doc. # 28, p. 1]. The undersigned instructed Plaintiff to identify the specific injury or harm for which he seeks monetary relief, and Plaintiff responded: "The injury pertaining to this case is a broken rib(s) and busted skull/head." *Id.*

Thus, excepting the excessive force claims, Plaintiff may not recover compensation for mental or emotional injuries for any of his claims. In addition, Plaintiff does not allege that he suffered any other injuries or damages compensable by monetary relief.

Accordingly, the Court should dismiss Plaintiff's request for compensatory relief for all claims other than his excessive force claims.

**7. The Closure of CCC**

Plaintiff seeks the closure of CCC. The undersigned instructed Plaintiff to amend and "explain why he seeks the closure of CCC (in other words, for which allegations does he seek this relief?)" He amended: "Plaintiff seeks relief and closure of CCC because malicious practices under law. The color of law is being practiced maliciously. [sic]."

Ultimately, Plaintiff does not join his request for relief to any plausible claim. He does not specify which "malicious practices" or actions under "color of law" to which he refers. Thus, the Court should deny the request for relief.

In addition, Plaintiff lacks standing to pursue this relief. "A litigant seeking redress in federal court must show that he has standing to pursue his claims." *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022). "Litigants must also demonstrate standing with respect to the *type* of relief they seek." *Id.*

"To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's

9

requested relief. Courts have divided this rule into three components: injury in fact, causation, and redressability." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (internal footnotes omitted).

"Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact. To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical. The purpose of the requirement that the injury be 'imminent' is to ensure that the alleged injury is not too speculative for Article III purposes. For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* (internal footnotes, quotation marks, and quoted sources omitted).

To "establish redressability, a plaintiff must show a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022).

Here, closing CCC is not substantially likely to remedy or redress any harm or injury which Plaintiff suffered in the past. As above, injunctive relief cannot conceivably remedy any past wrong. And to reiterate, Plaintiff does not connect his request for relief to any plausible claim.

Moreover, Plaintiff does not present a substantial likelihood that closing CCC will redress any continuing harm from past actions. His requested relief is unrelated to the harm from which he suffers: closing CCC will not help Plaintiff recover from harm from past, concluded actions.

Closing CCC could in theory redress uses of excessive force which might occur in the future at CCC; in other words, if CCC is closed, nothing can happen at CCC. However, Plaintiff does not allege any continuing injury or any substantial risk that excessive force will imminently occur. *See Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."); *Adams*, 2022 WL at *4 (finding no standing where the plaintiffs "at best offered [a]llegations of *possible* future injury that they have not claimed is imminent, or '*certainly impending*,' or anything other than speculative."). Simply put, there is no continuing or threatened conduct to enjoin.[8]

## 8. Lack of Cognizable Relief

In summary, Plaintiff's requests for habeas corpus, the closure of CCC, and compensation for claims other than excessive force are not cognizable under his allegations. Plaintiff does not seek any other relief for his claims. Accordingly, the Court should, excepting the excessive force claims, dismiss Plaintiff's remaining claims for failure state claims on which relief may be granted.

---

[8] *See Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308 (5th Cir. 1997) (plaintiff lacked standing to seek injunctive relief because there was no threat of present or future harm); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (denying injunctive relief when plaintiff could not show that she suffered any continuing harm or that there was a real or immediate threat of recurring harm); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (speculative future injury alone is not enough to warrant injunctive relief).

**9. Statute of Limitations**

Plaintiff claims that in 2019, E.R.T. Washington removed him from view of a camera and then beat him severely while he was in handcuffs, breaking his left rib. [doc. #s 20; 28, p. 1; 29, p. 1].

District courts are authorized to dismiss claims as frivolous if "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period sua sponte. *See Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

The statute of limitations for Section 1983 actions is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1984). Thus, Louisiana's one-year personal injury statute of limitations, under LA. CIV. CODE art 3492, applies here. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

However, the date of accrual for a Section 1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516 (*quoting Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981)). In other words, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brockman v. Texas Dep't of Crim. Just.*, 397 F. App'x 18, 22 (5th Cir. 2010).

12

Here, Plaintiff knew or had reason to know of the alleged excessive force—which occurred in 2019—the day it happened.[9] Plaintiff's claim, therefore, accrued at the latest in December 2019. Plaintiff had one year from that date, or until December 2020, to file his claim. As Plaintiff did not file this proceeding until, at the earliest, May 3, 2023,[10] the statute of limitations bars the claim.

The limitations period is subject to state tolling and equitable tolling in certain circumstances. "[E]quitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (*citing Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). The plaintiff bears the burden of establishing that equitable tolling applies. *Rotella v. Pederson*, 144 F.3d 892 (5th Cir. 1998); *see also Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) ("We have found that equitable tolling may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'") (*quoting Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)). Tolling can apply where "extraordinary circumstance[s] prevent[]" a plaintiff from filing suit. *Richards v. Gonzales*, 2022 WL 3226621, at *1 (5th Cir. Aug. 10, 2022).

---

[9] *See Morrill v. City of Denton, Texas*, 693 F. App'x 304, 307 (5th Cir. 2017) (holding that the constitutional injury was complete on the day the alleged excessive force took place); *Armstrong v. Serpas*, 670 F. App'x 851, 852 (5th Cir. 2016).

[10] Plaintiff drafted his initial pleading on May 3, 2023. [doc. # 1, p. 1].

Here, Plaintiff does not argue or suggest that his claim was tolled. He does not allege that any person's affirmative conduct reasonably induced him to forego filing suit within the limitations period.[11]

Accordingly, the Court should dismiss Plaintiff's excessive force claim against Defendant Washington.

**10. Defendant Riley's Use of Force**

On June 1 or 3, 2023, Plaintiff had an altercation with another inmate. [doc. #s 10, p. 3; 28, p. 1]. He claims that "E.R.T. Riley"[12] then handcuffed him, removed him from view of a camera, took him to a medical room, and used excessive force, punching him in the right side of his head and behind his left ear. [doc. #s 8, p. 1; 10, p. 3]. Plaintiff's face was swollen, and his head hurt. [doc. # 8, p. 1]. He suggests that he suffered a fractured skull. [doc. # 28, p. 2]. He maintains that he was not a threat after Riley handcuffed him. *Id.*

However, it is apparent on the face of Plaintiff's pleadings that his excessive force claim is unexhausted. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v.*

---

[11] If Plaintiff contends that his claims were tolled, he may present his contention in an objection to this Report and Recommendation.

[12] Presumably by "E.R.T.," Plaintiff means that Defendant Riley was a member of an emergency response team.

*Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton,* 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted).

Of import here, 42 U.S.C. § 1997e, clearly requires an inmate bringing a civil rights action to exhaust his available administrative remedies *before* filing suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). "Congress afforded corrections officials time and opportunity to address complaints internally *before allowing the initiation* of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). "It is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

Exhaustion is no longer left to the discretion of the district court; it is mandatory. *Id.* at 524. "[D]istrict courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal*, 702 F.3d 785, 787-88 (5th Cir. 2012).

District courts "may, sua sponte, 'dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust.'" *Hicks v. Garcia*, 372 F. App'x 557, 557-58 (5th Cir. 2010) (*quoting Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)).

Here, it is "clear" from the faces of Plaintiff's complaints (i.e., the dates he provides clearly on the faces of the complaints) that (1) he filed this proceeding on May 3, 2023, at the earliest but (2) his claim arose thereafter on June 1 or 3, 2023.[13] [doc. #s 1, p. 1; 10, p. 3; 28, p. 1]. *A fortiori*, then, Plaintiff could not possibly have exhausted his claim before filing this

---

[13] Plaintiff states in his initial form complaint that there is a prison grievance procedure at CCC. [doc. # 4, p. 2].

lawsuit.[14, 15] See *Torns v. Miss. Dep't of Corr.*, 301 Fed. App'x. 386, 388 (5th Cir. 2008) ("One way in which a complaint may show the inmate is not entitled to relief is if it alleges facts that clearly foreclose exhaustion."). As above, it is irrelevant whether Plaintiff exhausted his claim during this federal proceeding. As he did not exhaust the claim before he filed suit, he does not present claims on which relief may be granted.[16]

Plaintiff should first seek relief through the correctional facility's administrative grievance procedure and, to the extent he does not obtain the relief he seeks, to the extent he has already exhausted his administrative remedies and did not obtain the relief he sought, or to the extent exhaustion is unavailable, he may initiate a new proceeding.

---

[14] Importantly, the undersigned does not recommend dismissal for any failure to affirmatively plead or demonstrate exhaustion; rather, the undersigned recommends dismissal because it is manifest from the faces of the pleadings (i.e., from the dates on the faces of the pleadings) that it would be impossible for Plaintiff to have exhausted his claim *before* initiating this suit. See *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) ("[I]t is error to dismiss a prisoner's complaint for want of exhaustion before a responsive pleading is filed unless the failure to exhaust is clear from the face of the complaint. District courts may not circumvent this rule by considering testimony from a *Spears* hearing or requiring prisoners to affirmatively plead exhaustion through local rules.").

[15] See *Davis v. Hinton*, 2017 WL 5707540, at *8 (S.D. Miss. Nov. 27, 2017) ("To the extent that [the plaintiff] asserts a claim of retaliation for filing the instant suit, his claim must be dismissed for failure to exhaust the claim before filing suit."); *Clark v. Banks*, 2018 WL 1866619, at *6 (S.D. Miss. Jan. 2, 2018), report and recommendation adopted, 2018 WL 783075 (S.D. Miss. Feb. 8, 2018) (finding that the plaintiff "could not possibly have exhausted his claim before filing his Complaint" because he alleged that the defendant "retaliated against him for filing" the lawsuit).

[16] See *Hurd v. Stanciel*, 2016 WL 2903249, at *1 (N.D. Miss. May 18, 2016) ("[M]ost of the new allegations occurred after Mr. Hurd filed the instant complaint (June 4, 2015); as such, he could not have exhausted his administrative remedies as to these allegations prior to filing this case. Although exhaustion of administrative remedies is an affirmative defense, normally to be pled by a defendant, the court may dismiss a *pro se* prisoner claim if failure to exhaust is apparent on the face of the complaint. . . . As Hurd's failure to exhaust the claims arising after the filing date is plain on the face of the pleadings, the court will not consider those claims.").

This Report and Recommendation provides Plaintiff fair notice and opportunity to present his position with respect to exhaustion of this claim.[17] If Plaintiff contends that he did exhaust this claim before filing this proceeding, he may present his contention in an objection to this Report and Recommendation.

**11.     Pending Motions to Amend Complaint**

Although Plaintiff have been given the opportunity to amend his complaint eight times, he moves the court for leave to file ninth and tenth amended complaints. In his proposed ninth amendment, Plaintiff asserts that he is not changing the facts of his complaint, but he wants to amend to change his prayer for relief. He intends that he asked for lesser monetary relief, one hour of recreation, to place him in an open unit, to give him one hour of recreational time, and to give him habeas relief, but not to close CCC because "some people need jail." [doc. #32]. In his proposed tenth amendment, Plaintiff wishes to amend to add further claims that CCC is tampering with his paperwork and that it appears that someone there is "forging" the judge's signature. He says that he is not dismissing his claims, that he should get more than 30 minutes of recreation because others get more, that he is being "harassed" to get him to "get out of character," but acknowledges that his medication has calmed him. [doc. #33].

First, eight times is more than ample opportunity to amend to assert any claims Plaintiff wishes to. While, generally, leave to amend should be freely given when justice so requires, *see* FED. R. CIV. P. 15, Plaintiff's ninth attempt to amend does not raise new factual allegations by his own admission, and, thus, the relief requested could only apply if he otherwise states a claim.

---

[17] "Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Yankton v. Epps*, 652 F. App'x 242, 247048 (5th Cir. 2016) (quoting *Day v. McDonough*, 547 U.S. 198, 210 (2006)).

Further, to the extent that he wishes to seek habeas relief, that petition must be filed separately. Accordingly, his ninth attempt to amend is DENIED.[18]

Second, with regard to this tenth attempt, amendment would be futile. While a prison official's interference with a prisoner's legal mail may violate the prisoner's constitutional right of access to the courts, *see Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir. 1993), to state a claim, a plaintiff must show actual injury. *See Ruiz v. United States,* 160 F.3d 273, 275 (5th Cir.1998). In this case, Plaintiff indicates that he has been "confused," but not that he was somehow prejudice. Further, "harassment" without more does not state a claim, and his claim that he is denied recreational time has been addressed above. Accordingly, Plaintiff's tenth attempt to amend is also DENIED.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Grandville Dewayne Williams's excessive force claim against E.R.T. Riley be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as untimely, frivolous, and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

---

[18] The undersigned recognizes that Plaintiff now apparently wishes to withdraw his request for the closure of CCC, but has nonetheless analyzed that request as the motion to amend has been denied. It is further noted that the Report and Recommendation already addresses Plaintiff's recreation claim for all practical purposes because he had already complained about the length of time he is kept in his cell on a daily basis.

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 25th day of October, 2023.

Kayla Dye McClusky
United States Magistrate Judge